I INTRODUCTION
The present action arises from an alleged abusive marital relationship between the plaintiff, Gail DeCorso, and her husband, Michael DeCorso, who were both married and baptized into the Jehovah's Witness religion. Service of process was made on the defendant Watchtower Bible and Tract Society of New York, Inc. (Watchtower) the corporate organization of the Jehovah's Witness religion. This case is brought against the corporation Watchtower and individual defendants (elders), all alleged agents and servants of Watchtower. It is the plaintiff's claim that Watchtower and its elders, the individual defendants, are responsible to the plaintiff for the abuse inflicted upon her by her husband. Service of process was made on the defendant Watchtower via certified mail on March 12, 1998.[1] The operative complaint for the purpose of this motion is the second revised complaint,[2] in which the plaintiff *Page 388 
alleges, in four counts, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract and breach of fiduciary duty.
The complaint alleges that on October 4, 1975, the plaintiff married Michael DeCorso, who assaulted and battered her for the first time on October 7, 1975 while on their honeymoon in Bermuda. The plaintiff complains that within the first three years of the marriage, the assaults occurred two or three times per month, all within their apartment at 26 Midfield Drive in Waterbury. After 1978, the physical assaults became less frequent until the next serious assault on April 12, 1987 at their home at 133 Plank Road in Prospect. The plaintiff further alleges that at the end of 1989 to 1990-91 the frequency of the assaults increased. A specific assault allegedly occurred on Robinson Street off Griggs Street in Waterbury, outside the plaintiff's automobile. The plaintiff further avers that at Kingdom Hall meetings, her husband would pinch her and press against her, and use other physical intimidation whenever he thought that she was reacting to comments of the speaker in a manner that might reflect upon his own behavior toward her.
The plaintiff alleges that the defendant Watchtower and defendants Charles E. Bradshaw, Charles Thomas, James R. Waddington, George Griffin, et al., who are elders in the various congregations of Jehovah's Witnesses, failed to render assistance to her when she was consistently and repeatedly beaten by her husband over a period of twenty years.
It is the allegation of the plaintiff that, in accordance with the requirements and teachings of the defendant Watchtower, she was required to accept instruction in motion to strike. The court will treat the second revised complaint dated July 29, 1999 as the operative complaint for the purposes of the present motion to strike. *Page 389 
the matters of her daily life from all of the "elder" defendants. She states that she first sought the assistance of Bradshaw in escaping from her husband's alleged violence during the early part of 1976. Bradshaw was an appointed local overseer/elder/older man representing the organization of Jehovah's Witnesses, having served prior to and since the plaintiff's baptism in 1972. Her claim was that Bradshaw responded to the plaintiff's requests for assistance by warning her that she was slandering her husband. During the first year of her marriage, the plaintiff had a conversation at Bradshaw's home about conflicts and a physical attack her husband had made and that Bradshaw told her husband that he would have to correct this type of behavior. Further, Bradshaw allegedly discouraged the plaintiff from supplying details about her husband and often told her that she may have caused her own problems. That on at least two occasions, the plaintiff telephoned him from Waterbury Hospital, described alleged assaults committed by her husband and begged for help, and that he, Bradshaw, instructed and directed her to listen to her husband and to do what he said.
The plaintiff claims that from 1978 to 1985, she spoke with Waddington three or four times per year. Waddington served as an elder from prior to the plaintiff's baptism in 1972 to the present. During each conversation, she told Waddington of her husband's physical and emotional abuse and that Waddington told her to be patient and to stay with her husband. It is the plaintiff's claim that Waddington directly asked her if she was being physically assaulted by her husband, and, when she responded affirmatively, he thought the conversation entertaining.
As to the elder Bender, it is the plaintiff's claim that she spoke to him on five or six occasions between 1980 and 1985 regarding her husband's alleged abuse and that he refused to help her. *Page 390 
An alleged joint meeting between the plaintiff and defendants Griffin, Bender and Waddington took place in June, 1985, concerning her husband's violence against her and that Griffin refused to look when the plaintiff asked him to observe the marks on her back allegedly resulting from her husband's assaults.
The complaint alleges that on April 12, 1987, her husband, Michael DeCorso, threw the plaintiff against a wall and fractured her neck. Just minutes after the alleged assault and battery, the plaintiff approached Bender, as an agent for Watchtower, and asked him for help. The plaintiff pointed to her ripped stocking and blood on her leg, and told Bender she and her husband had a problem. It is the plaintiff's claim that Bender, the designated agent of the defendant Watchtower, was responsible to supervise and protect the plaintiff as a member of the congregation and that he refused to help her. She further alleges that in 1988, she telephoned Bender on two occasions concerning the assaults and asked for his help and that he refused even to discuss the matter.
The complaint further alleges that because of the power relationships within the Jehovah's Witness religion, she was forced to remain in the physically and emotionally abusive marriage and that it was the defendants' acts and omissions which proximately caused the plaintiff to suffer physical and emotional injuries during the period of 1975 to 1994. She also alleges that the defendants terminated the plaintiff's membership on March 13, 1996 and that since Watchtower maintains a strictly enforced rule of an absolute prohibition on its members from litigating in civil courts, she was prohibited by Watchtower from instituting the present litigation.
The defendants filed the present motion to strike on the ground that the statute of limitations has lapsed for *Page 391 
each of the plaintiff's claims against the defendants and that her allegations in each count fail to state a claim for which relief can be granted. Finally, the defendants move to strike the complaint on the ground that the plaintiff's complaint is barred by the first amendment to the United States constitution. The plaintiff objects on the ground that the statute of limitations may not be raised by a motion to strike, and that the defendants expressly prohibited the plaintiff from filing the present action.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc.
v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 383 n. 2, 650 A.2d 153 (1994); see also Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576,580, 693 A.2d 293 (1997).
"[A] claim that an action is barred by . . . the statute of limitations must be pleaded as a special defense, not raised by a motion to strike." (Internal quotation marks omitted.) Girard v. Weiss, 43 Conn. App. 397, 415,682 A.2d 1078, cert. denied, 239 Conn. 946, 686 A.2d 121
(1996); see also Forbes v. Ballaro, 31 Conn. App. 235,239, 624 A.2d 389 (1993). "[T]he objection to this mode of pleading is that it raises no issue and deprives the plaintiff of an opportunity to reply a new promise, or an acknowledgment. . . . A motion to strike might also deprive a plaintiff of an opportunity to plead matters *Page 392 
in avoidance of the statute of limitations defense." (Citations omitted; internal quotation marks omitted.) Forbes v. Ballaro, supra, 239.
There are two limited exceptions, however, to this general rule. A motion to strike to raise the defense of the statute of limitations is appropriate, "[i]f all of the facts pertinent to the statute of limitations are pleaded in the complaint and the parties agree that they are true, or if a statute creating the cause of action on which the plaintiff relies fixes the time within which the cause of action must be asserted . . . ." Girard v.Weiss, supra, 43 Conn. App. 415; see also Forbes v.Ballaro, supra, 31 Conn. App. 239-40.
At oral argument, the defendants argued that if all the facts pertinent to the statute of limitations are pleaded in the complaint and the parties agree that they are true, the court can decide the issue on a motion to strike. The defendants argue that the statute of limitations has lapsed for each of the plaintiff's claims against the defendants. Further, the defendants argue that based on the plaintiff's own allegations, the acts or omissions of the defendants occurred beyond the limitations period for each cause of action. Specifically, the defendants argue that the complaint should be dismissed as to all defendants on the ground that the statute of limitations lapsed before the plaintiff filed her complaint on March 9, 1998.
The plaintiff argues that the court should not consider the defendants' first ground of the motion to strike because "a motion to strike serves a limited function and may not be used to assert an affirmative defense." Further, the plaintiff argues that the complaint expressly alleges that until the plaintiff was "disfellowshipped" from the defendant society in March, 1996, the defendants expressly prohibited her from filing the *Page 393 
present lawsuit. Thus, the plaintiff argues that any limitations period could have not commenced to run until that date and none of the limitations periods asserted by the defendants would bar this lawsuit.
In the present case, all facts pertinent to the statute of limitations are pleaded in the complaint and the parties agree that they are true. Specifically, in their memorandum of law and at oral argument, the defendants "submit that the dates set forth in the complaint by the plaintiff are true and accurate dates." Moreover, the complaint alleges the following specific dates of the acts or omissions as to each defendant: Bradshaw, 1976-88; Waddington, 1978~85; Griffin, 1985; Thomas, 1990-91; Bender, 1980~88; Blackwell, 1989; and Frager, 1990-94. Further, the complaint alleges that "the acts and omissions of the defendant . . . directly and proximately caused the plaintiff to suffer physical and emotional injuries during the period of 1975 to 1994." The holding in Girard v. Weiss, supra, 43 Conn. App. 415, permits the court to address the statute of limitations in the present motion to strike.
 II A COUNT ONE-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
General Statutes § 52-577 provides "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." With respect to the scope of that statute, "[t]he three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in [General Statutes] § 52-584 or another section. . . . Thus, the three year limitation period of § 52-577
applies to all actions based on a tort unless there has *Page 394 
been a specific statutory exclusion." (Citations omitted; internal quotation marks omitted.) Travelers IndemnityCo. v. Rubin, 209 Conn. 437, 441, 551 A.2d 1220 (1988). See, e.g.,Sanborn v. Greenwald, 39 Conn. App. 289, 301, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995) (noting that actions for legal malpractice based on negligence are subject to § 52-577).
"Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins . . . with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Citations omitted; internal quotation marks omitted.)Collum v. Chapin, 40 Conn. App. 449, 451, 671 A.2d 1329 (1996). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision . . . are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id. "The three year limitation period of § 52-577
begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." Id.
The defendant argues that count one should be stricken as to all defendants on the ground that the statute of limitations lapsed before the plaintiff filed her complaint on March 9, 1998. The plaintiff argues that because the defendant Watchtower expressly prohibited the plaintiff from filing the present lawsuit, the limitations period could not have commenced to run until she was disfellowshipped in March, 1996.
In the present case, the operative date for the commencement of this action is March 12, 1998. The complaint alleges the following specific dates of the acts or omissions as to each defendant: Bradshaw, 1976-88; Waddington, 1978-85; Griffin, 1985; Thomas, 1990-91; Bender, 1980-88; Blackwell, 1989; and Frager, 1990-94. *Page 395 
Further, the complaint alleges that "the acts and omissions of the defendants . . . directly and proximately caused the plaintiff to suffer physical and emotional injuries during the period of 1975 to 1994." Since the plaintiff commenced this action on March 12, 1998, her claim of intentional infliction of emotional distress is time barred by the three year statute of limitations.
The applicable statute of limitations, however, may be tolled by the doctrine of fraudulent concealment. General Statutes § 52-595 provides in pertinent part that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue . . . when the person entitled to sue thereon first discovers its existence." To prove fraudulent concealment, plaintiffs must show "(1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action." Bartone v.Robert L. Day Co., 232 Conn. 527, 533, 656 A.2d 221 (1995).
The plaintiff has failed sufficiently to allege fraudulent concealment to toll the statute and there are no allegations sufficient to demonstrate concealment of facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on her cause of action. Accordingly, the defendants' motion to strike count one of the complaint is granted.
 B COUNT TWO-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
General Statutes § 52-584 provides in pertinent part that "[n]o action to recover damages for injury to the *Page 396 
person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."
The defendants argue that the last negligent acts or omissions by any defendant occurred in 1991, more than two years before the plaintiff filed her complaint on March 12, 1998. The claim of negligent infliction of emotional distress is time barred by the two year statute of limitations. The plaintiff has not alleged facts sufficient to toll the statute in that there are no allegations that the defendants concealed facts for the purpose of inducing the plaintiff to delay the filing of this cause of action. The defendants' motion to strike the second count of the complaint is granted.
 C COUNT THREE-BREACH OF CONTRACT
General Statutes § 52-576 provides in pertinent part that "(a) No action for an account, or on any simple or implied contract, or on any contract in writing shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section. (b) Any person legally incapable of bringing any such action at the accruing of the right of action may sue at any time within three years after becoming legally capable of bringing the action." Difficulties may arise in determining when the contract cause of action has accrued, although "[t]he true test is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.)Engelman v. Connecticut General Life Ins. Co., 240 Conn. 287, 294 n. 7, 690 A.2d 882 (1997). *Page 397 
"The . . . claim of breach of an implied contract could be read to allege failure to perform duties imposed either by a contract implied in fact or a contract implied in law. . . . A contract implied in fact, like an express contract, depends on actual agreement . . . [and a] contract implied in law requires, as a foundation, that there be an obligation created by law that imposes a duty to perform." (Citation omitted; internal quotation marks omitted.)Chotkowski v. State, 240 Conn. 246, 268 n. 26, 690 A.2d 368 (1997). To state a cause of action for breach of an implied contract, the plaintiff must allege "that the [defendant] agreed, either by words or action or conduct, to undertake any form of actual contractual commitment to the plaintiff." (Internal quotation marks omitted.) D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, 202 Conn. 206, 211-12
n. 2, 520 A.2d 217 (1987). The defendant moves to strike the third count of the revised complaint on the ground that the action is barred by the six year statute of limitations, claiming that the last alleged acts or omissions committed by any defendant were in 1991. The plaintiff, however, has alleged that she was disfellowshipped from the defendant society in March, 1996. It is the plaintiff's claim that during the term of her membership, the defendant agreed that in exchange for her obedience, they would protect her from physical and emotional injury. This count of the plaintiff's revised complaint is not barred by the statute of limitations since the alleged act of the defendant society that disfellowshipped her can be considered as the date the breach of the implied agreement occurred, which is less than six years from the date this action was instituted.
The defendants also argue that the first amendment prohibits this court from considering the breach of contract claim, since, to determine this claim, the court necessarily would become involved in an "excessive *Page 398 
entanglement" with religion. The first amendment does not bar application of a secular standard to certain tortious conduct in a church setting. See Mullen v. Horton,46 Conn. App. 759, 700 A.2d 1377 (1997) (holding that a respondeat superior claim against the institutional defendant for a tort committed by a defendant priest can be resolved under Connecticut law without resorting to ecclesiastical standards of church doctrine); see also Martinelli v. Bridgeport Roman CatholicDiocesan Corp., 10 F. Sup.2d 138 (D.Conn. 1998) (holding that a claim of breach of fiduciary duty can be resolved under Connecticut law).
"It is now well established that state judicial intervention is justified when it can be accomplished by resort to neutral principles of law arising out of the law of property and of trusts that eschew consideration of doctrinal matters such as the ritual and liturgy of worship or the tenets of faith." New York Annual Conference
v. Fisher, 182 Conn. 272, 281, 438 A.2d 62 (1980), citing Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020,61 L.Ed.2d 775 (1979).
The defendants argue that the facts in this case do not allow for an analysis under the "neutral principles" approach. The defendants argue that the plaintiff's claims are inextricably tied to religious doctrines, teachings, and internal affairs of Jehovah's Witnesses.
"[T]he United States Supreme Court concluded that although the analysis may involve examination of some religious instruments, such as a church constitution, the inquiry must be performed in purely secular terms without relying on religious precepts in determining whether the document indicates that the parties have intended to create a trust." (Internal quotation marks omitted.) Trinity-St. Michael's Parish, Inc. v. EpiscopalChurch in the Diocese of CT, 224 Conn. 797, 803,620 A.2d 1280 (1993). *Page 399 
Connecticut courts have not applied secular standards to the construction of an implied contract between a religious organization and a parishioner. Courts have, however, addressed the issue with regard to property and trusts. "[I]n resolving ownership disputes over church property, a civil court must first determine whether an express trust exists, and if it does, the court must enforce its terms. If no express trust is found, the court must determine whether an implicit trust exists in favor of the general church. In conducting this inquiry, the court must examine the polity of the church, in addition to the church constitution and its canons, for language of trust in favor of the general church." Id., 804.
The plaintiff's revised complaint does not allege the breach of an express contract. The revised complaint, citing to the tracts and other literature of the Watchtower organization, alleges that the defendants created an implied contract by promising the plaintiff that if she would submit to their control, they would protect her from the dangers of the external world. The terms of the agreement, it is alleged, would protect the plaintiff "from suffering and unnecessary physical and emotional injury" and references scripture Hebrews 13:17 as the basis of this agreement. The plaintiff, in the same paragraph, then provides scriptural references from page fifty-one to page fifty-eight of the revised complaint substantiating the teachings of the church with regard to the alleged implied contract. The court could not determine whether there is an implied contract under the neutral principles approach without resorting to an excessive entanglement with the religious doctrines, teachings and internal affairs of the defendant Watchtower organization. As to the third count of the revised complaint, the plaintiff has failed to state a claim for breach of contract upon which relief can be granted, and, therefore, the court will strike that count. *Page 400 
 D COUNT FOUR-BREACH OF FIDUCIARY DUTY
Actions sounding in breach of trust or breach of fiduciary duty are governed by § 52-577. Lambert v. Stovall,205 Conn. 1, 4, 529 A.2d 710 (1987). Under § 52-577, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
As this court observed earlier in this opinion while addressing the plaintiff's claim for intentional infliction of emotional distress, "[s]ection 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins . . . with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) Collum v. Chapin, supra,40 Conn. App. 451. "When conducting an analysis under § 52-577, the only facts material to the trial court's decision . . . are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id. "The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." Id.
The defendants argue that the last acts or omissions of any defendant were in 1994. Again, since the critical date is March 12, 1998, the date this action was commenced, the plaintiff's claim for breach of fiduciary duty is time barred by the three year statute of limitations. As is true with counts one and two, the plaintiff has failed sufficiently to allege fraudulent concealment to toll the statute because the allegations do not demonstrate that facts were intentionally concealed by the defendants for the purpose of obtaining delay on the plaintiff's part in filing a complaint against them. Therefore, the court *Page 401 
will grant the defendants' motion to strike the fourth count of the revised complaint.
 III CONCLUSION
For the foregoing reasons, the defendants' motion to strike is granted as to all of the four counts of the revised complaint dated July 29, 1999.