ROBERT ENGELMAN, EXECUTOR (ESTATE OF ELLA B. RYDER) *v.* CONNECTICUT GENERAL LIFE INSURANCE COMPANY (15508)

Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued January 16—officially released March 25, 1997

*William H. Clendenen, Jr.*, with whom, on the brief, was *Nancy L. Walker*, for the appellant (plaintiff).

*Timothy F. Woodbridge*, for the appellee (defendant).

*Opinion*

BERDON, J. The dispositive issue in this appeal is whether a change of beneficiary in a life insurance policy can be accomplished by substantial compliance with the policy requirements, as opposed to strict compliance, where the policy requires that the change of beneficiary be requested "on a form satisfactory to the

company." The plaintiff, Robert Engelman, is the executor of the estate of the decedent, Ella B. Ryder, who, prior to her death, owned a life insurance policy (policy) issued by the defendant, Connecticut General Life Insurance Company. The trial court, *Booth, J.*, held that Ryder had not effectively changed the beneficiary of the policy and rendered judgment for the defendant.[1] We reverse the judgment of the trial court.[2]

The undisputed facts found by the trial court are as follows. In 1961, the defendant issued a policy insuring the life of Ryder for $100,000. Her husband was listed as the owner and primary beneficiary of the policy, and her nephew, Philip G. Zink, was named as a contingent beneficiary. The policy provided, in pertinent part, as follows: "A new beneficiary may be designated from time to time by filing with the home office a written request therefor on a *form satisfactory to the company* and signed by the owner. . . . No change of beneficiary shall take effect until such change shall have been recorded in writing by the company." (Emphasis added.) The policy did not define or explain the terms "on a form satisfactory to the company" or "recorded in writing by the company."

---

[1] This case had previously been before the Appellate Court. See *Engelman* v. *Connecticut General Life Ins. Co.*, 38 Conn. App. 134, 135–36, 658 A.2d 983 (1995). The Appellate Court reversed the judgment of the trial court, *DeMayo, J.*, in favor of the defendant and remanded the case for further proceedings after concluding that the trial court lacked subject matter jurisdiction because the plaintiff had sought a declaratory judgment and all the necessary parties were not made parties to the action or given reasonable notice of the action. Id., 137–38. On remand, the plaintiff amended his complaint to delete the claim for a declaratory judgment. See *Mannweiler* v. *LaFlamme*, 232 Conn. 27, 36 n.11, 653 A.2d 168 (1995). The trial court on remand, *Booth, J.*, thereafter, pursuant to the agreement of the parties, decided the merits of the case relying on the transcripts and exhibits from the first trial and judgment was again rendered for the defendant. See id.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

Upon her husband's death in 1973, Ryder, as executrix of his estate, became the owner of the policy and, as such, had the right to change the beneficiary. Ryder's relationship with her nephew Zink began to deteriorate and it continued to worsen up to the time of her death. In 1976, through her insurance agent, Ryder unsuccessfully attempted to change the beneficiary on the policy. In 1977, Ryder asked the plaintiff, her attorney, to revise her estate plan. The revised estate plan was predicated, in part, on making Ryder's estate the beneficiary of the policy. On the basis of the plaintiff's advice, Ryder wrote directly to the defendant in February, 1978, asking it to prepare a change of beneficiary form naming as beneficiaries the executors or administrators of her estate and to send the form to the plaintiff for his review. The trial court found that there was no evidence that the defendant sent Ryder the requested form at that time. Consequently, nothing ever came of this request.[3]

In January, 1979, Ryder sent a letter, prepared by the plaintiff, to the defendant purporting to change the beneficiary from Zink to the executor of her estate.[4]

[3] This attempt to change beneficiaries was unsuccessful because Ryder had not provided the defendant with a policy number and, therefore, the defendant was unable to locate the policy in its files. The record does indicate that the defendant advised the plaintiff of this problem by letter and requested the necessary information. The record is silent as to whether the plaintiff ever responded to this request.

[4] The letter provided as follows:

"1377 Boston Post Road
Milford, Connecticut 06460
January 8, 1979

Connecticut General Life Insurance Co.
950 Cottage Grove Road
Bloomfield, Connecticut 06002

Re: Policy No. 1021625
Mrs. Ella B. Ryder

Gentlemen:

I hereby revoke all previous beneficiary designations with respect to the death proceeds on the above policy on my life, and I direct that the death

The letter referenced the policy by number and name, was dated January 8, 1979, and was signed by Ryder and witnessed by the plaintiff. The defendant received the letter and placed it in the policy file; however, the defendant did not "record" the change of beneficiary on the policy. Instead, as a result of this letter, the defendant immediately sent the plaintiff a change of beneficiary form, which he forwarded to Ryder at her Florida residence. The change of beneficiary form sent by the defendant was accompanied by a form cover letter which provided, in pertinent part, that "[a]ll forms must be dated, signed, witnessed and returned to us. Until this is done, the changes you have requested cannot be made." The form was neither returned to the defendant nor to the plaintiff, and it is not known whether Ryder ever received the form from the plaintiff. The trial court found that "[t]here was no evidence that [Ryder] did anything after the letter of January, 1979, to show that she had changed her mind about making her estate the beneficiary."

Ryder continued to pay the premiums on the policy until her death on July 2, 1990. When the plaintiff, as executor of Ryder's estate, demanded payment of the policy proceeds from the defendant a few weeks after her death, an appropriate claim form was provided to him. The form was completed and returned to the defendant. The defendant, however, refused to pay the

proceeds shall be paid in one sum to the Executor of my estate.

I retain all rights of ownership on the policy and all right[s] to make a future change of beneficiary.

My intention is that this change of beneficiary become effective immediately; however, if you wish confirmation of this beneficiary change on your own form, please supply the form to my attorney, Robert J. Engelman, Esq., Schwartz & Knight, P.O. Box 679, New Haven, Connecticut, 06503.

Very truly yours,

Witnessed:
/s/ Robert Engelman                    /s/ Ella B. Ryder"

proceeds of the policy, claiming, initially, that Ryder did not have authority to change the beneficiary because she was not the owner of the policy. Subsequently, the defendant changed its position, and, by letter dated June 26, 1992, formally denied the plaintiff's claim for the policy proceeds on the ground that Ryder had not effectively changed the beneficiary because she had failed to submit the change on the defendant's form.[5]

The defendant took this position notwithstanding its admission that Ryder's letter of January 8, 1979, fully complied with the formalities required by the defendant's change of beneficiary form, in that it was a signed, dated and witnessed written request, and that it clearly indicated the new beneficiary. The defendant understood that Ryder's letter expressed her intent to name her estate as the beneficiary on her policy, and it also conceded that Ryder's intent never changed between the time of her 1979 letter to the defendant and the time of her death in 1990. The defendant, however, refused to commence an interpleader action, which had been proposed by the plaintiff, in order to obtain a judicial determination as to who was entitled to the insurance proceeds.[6] Instead, the defendant sought out

[5] The June, 1992 letter provided in pertinent part as follows: "The policy records contain a letter signed by the Insured, Ella B. Ryder, dated January [8], 1979, revoking all previous beneficiaries and directing that the death proceeds be payable to the Executor of her estate. . . . It is Company practice to require that a Change of Beneficiary be submitted on a company provided form [in order] to constitute a 'form satisfactory to the Company' [as required by the terms and conditions of the policy]. This condition was not satisfied by the Insured. The Company was under no legal obligation to change the beneficiary pursuant to the letter request and did not, in fact, record a Change of Beneficiary on its records."

[6] The proposed interpleader action would have been governed by General Statutes § 52-484, which provides: "Action in nature of interpleader. Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, *may bring a complaint in equity*, in the nature of a bill of interpleader, to any court which by law has equitable

Zink, the beneficiary that Ryder had purportedly replaced, sent him a claim form, and subsequently paid the proceeds of the policy to him.

The plaintiff then brought the present action, alleging breach of the life insurance contract, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., based upon unfair insurance practices as defined in the Connecticut Unfair

jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case, may tax costs at its discretion and, under the rules applicable to an action of interpleader, may allow to one or more of the parties a reasonable sum or sums for counsel fees and disbursements, payable out of such fund or property; but no such allowance shall be made unless it has been claimed by the party in his complaint or answer." (Emphasis added.)

In *O'Connell* v. *Brady*, 136 Conn. 475, 481, 72 A.2d 493 (1950), this court stated that "[o]rdinarily, the requirements in an insurance policy as to the steps to be taken to make a change of beneficiary are for the protection of the insurer and, unless rights have become vested, the insurer may waive them and change the beneficiary although they have not been complied with. . . If the insurer does not change the beneficiary but pays the proceeds into court in an interpleader action, it thereby waives any right it had to insist that the requirements of the policy be complied with; *but this does not work a change in the beneficiary,* and it is for the court to determine who has the better right to the proceeds." (Citations omitted; emphasis added.) Furthermore, policy formalities are intended to protect not only the insurance company from rival claims, but also the owner's choice of beneficiary and the interests of the beneficiaries. See *Bigley* v. *Pacific Standard Life Ins. Co.*, 229 Conn. 459, 464, 642 A.2d 4 (1994) (holding that insurance company bears loss for payment to person fraudulently substituted for beneficiary where policy provided that only owner could change beneficiary); R. Keeton, Insurance Law (1971) § 4.11 (e), pp. 254–55 (stating that change of beneficiary clauses are for protection of insurer, owner and third party beneficiaries).

The plaintiff argues that, because he demanded that the defendant institute an interpleader action pursuant to § 52-484, the trial court should have applied the reasoning of *O'Connell* by holding that the defendant waived any right it had to insist on the policy formalities. Although the defendant could have brought an interpleader action, it did not do so. We agree with the trial court that the defendant was under no obligation to bring an interpleader action. Nevertheless, as the defendant conceded before the trial court, having paid Zink rather than follow the interpleader procedure, the defendant did so at its own peril.

Insurance Practices Act (CUIPA). General Statutes
§ 38a-816 et seq.

The trial court rendered judgment in favor of the
defendant on all of the plaintiff's claims. The trial court
found that the policy's requirement that a written
request for a change of beneficiary be on a "form satis-
factory to the company" meant that the form had to be
on a "company approved form." Although the defendant
represented to the plaintiff, in its June, 1992 letter deny-
ing the plaintiff's claim for the insurance proceeds, that
a "form satisfactory to the company" meant on a "com-
pany provided form," the trial court found that in prac-
tice the defendant had approved several different forms
for use in making beneficiary changes. The trial court
also found that although Ryder's intent was clear
regarding the change of beneficiary, she never
requested the change of beneficiary on a "company
approved form" as required by the terms of the policy.
Consequently, the trial court held that Ryder had failed
to do all in her power to comply with the change of
beneficiary provision in the policy, and that her failure
to do so was not due to circumstances beyond her
control. The plaintiff argues on appeal that the trial
court applied the wrong legal standard and improperly
concluded that Ryder had not legally changed the bene-
ficiary. We agree with the plaintiff.[7]

---

[7] The defendant claims, as an alternate ground on which to affirm the
judgment of the trial court, that the plaintiff's breach of contract claim is
barred by the six year statute of limitations contained in General Statutes
§ 52-576 (a), which provides in pertinent part that "[n]o action . . . on any
contract in writing shall be brought but within six years after the right of
action accrues . . . ." The defendant claims that the breach of contract
occurred in 1979 when it did not change the beneficiary. We disagree. This
claim is simply without merit. "While the statute of limitations normally
begins to run immediately upon the accrual of the cause of action, some
difficulty may arise in determining when the cause or right of action is
considered as having accrued. The true test is to establish the time when
the plaintiff first could have successfully maintained an action." (Internal
quotation marks omitted.) *Wynn* v. *Metropolitan Property & Casualty Ins.
Co.*, 30 Conn. App. 803, 807–808, 623 A.2d 66 (1993), aff'd, 228 Conn. 436,

"One of the most troublesome areas of life insurance law concerns the question of whether the insured who has reserved the right to change the beneficiary without [the beneficiary's] consent has effected a valid change in [beneficiary] where the contract provisions relative to such change have not been complied with strictly. . . . Generally, the contract provides that the insured must execute a written request for a change and send this request to the insurer along with the policy . . . . In recent years many old line companies have changed their policy language in policies of current issue so that a change may be effected without endorsement of the change on the policy, the insured merely executing a request for the change, which is then sent in and 'recorded' or 'approved' by the company." B. Anderson, Life Insurance (1991 & 1996 Sup.) § 18.2, pp. 525–26.

Although "the general rule [is] that a change of beneficiary of an insurance policy can be effected by following the procedure prescribed in the policy"; *Bigley* v. *Pacific Standard Life Ins. Co.*, 229 Conn. 459, 464, 642 A.2d 4 (1994); the plaintiff in this case relies on the "substantial compliance doctrine," an exception to the general rule.

The substantial compliance doctrine has its genesis in Connecticut as a narrow exception to the requirement that the owner of an insurance policy could change the beneficiary only by strictly complying with the terms of the policy. In *Bachrach* v. *Herrup*, 128 Conn. 74, 76, 20 A.2d 395 (1941), this court stated that "[t]he general rule is that a change of beneficiary can only be effected by following the mode prescribed by the policy, however clear the intention to make the change may be. Insurance companies usually require

635 A.2d 814 (1994). The breach of contract occurred, as the trial court found, when the defendant denied payment of the claim to the plaintiff in 1992. The plaintiff commenced his action in 1992, when the cause of action accrued and, therefore, the statute of limitations had not run.

. . . that the original policy be surrendered for indorsement. To this rule there is a well recognized exception and a change is effective where the insured has done all in his power to comply therewith but has failed because the policy is beyond his control."[8] See also *O'Connell* v. *Brady*, 136 Conn. 475, 479–80, 72 A.2d 493 (1950).

Subsequent to *Bachrach* and *O'Connell*, this court stated, by way of dicta[9] in *Aetna Life Ins. Co.* v. *Hartford National Bank & Trust Co.*, 146 Conn. 537, 541–42, 153 A.2d 448 (1959), that in addition to the exception where the insured has done all in his or her power to comply with the procedure set out in the policy, but has failed because of some circumstance beyond his or her control, "there might exist equitable considerations of a character such that they, rather than technical legal principles, should prevail. . . . Proof of intention alone is not sufficient, but where the intention is manifest and substantial affirmative action has been taken by the insured to effectuate a change of beneficiary the courts generally will make the change effective even though there has not been a strict compliance with the terms of the [insurance] contract. . . . The number of cases on the matter involved here is legion. They are resolved primarily on issues of fact." (Citations omitted.) Indeed, in *O'Connell*, this court provided a harbinger for the refinement of the substantial compliance

---

[8] A policy is "beyond the control" of the owner when, for example, the named beneficiary refuses to surrender the policy to the owner so that a change of beneficiary can be endorsed on the policy. See *Bachrach* v. *Herrup*, supra, 128 Conn. 76.

[9] Because *Aetna Life Ins. Co.* was decided on the basis that the owner of the policy had abandoned her plan to change the beneficiaries on her policy, there existed no intent under the first prong of the exception to the general rule expressed in *Bachrach*. Furthermore, we recognize that *Aetna Life Ins. Co.* must be viewed in the context of an interpleader action brought by the insurer. See *O'Connell* v. *Brady*, supra, 136 Conn. 481; see also footnote 6.

doctrine in *Aetna Life Ins. Co.* by stating that "the insured desiring a change of beneficiary must comply with the requirements of the policy *or at least make every reasonable effort to comply with them in order to obtain relief through equitable principles.*" (Emphasis added.) *O'Connell* v. *Brady,* supra, 136 Conn. 480.

We believe that this case presents the opportunity to embrace and apply the substantial compliance doctrine as set forth in *Aetna Life Ins. Co.* We conclude that the doctrine applies regardless of whether the issue of a purported change of beneficiary is raised in an equitable or legal action.[10] Other courts, assuming that we would adopt the dicta in *Aetna Life Ins. Co.,* have already applied the substantial compliance doctrine as Connecticut law. See *Kulmacz* v. *New York Life Ins. Co.,* 39 Conn. Sup. 470, 474, 466 A.2d 808 (1983) (quoting dicta from *Aetna Life Ins. Co.* and referring to it as substantial compliance doctrine); see also *Mann* v. *Metropolitan Life Ins. Co.,* 683 F. Sup. 27, 30 (D. Conn. 1988) (applying Connecticut law and citing and applying substantial compliance doctrine from *Kulmacz* and *Aetna Life Ins. Co.*). "The application of a rule which does not require absolute compliance with all formalities specified in a life insurance policy concerning a change of a beneficiary seems appropriate in some situations. This approach is especially justified when the evidence shows that an insured has taken substantial affirmative action in an attempt to effectuate the change. The majority of the decisions [on] point adopt rules embracing this approach. Several courts have observed or concluded, '[a]ll that is required is that every reasonable effort under the circumstances be made to effect the change.' These decisions are sometimes viewed as having adopted a rule of substantial compliance." R. Keeton & A. Widiss, Insurance Law (1988) § 4.11 (d) (1), pp. 430–31, quoting *Provident*

---

[10] See footnote 6.

*Mutual Life Ins. Co.* v. *Ehrlich,* 508 F.2d 129, 133 (3d Cir. 1975) (applying Pennsylvania law); see also *Lopez* v. *Massachusetts Mutual Life Ins. Co.,* 170 App. Div. 2d 583, 584, 566 N.Y.S.2d 359 (1991) ("even in the absence of such a waiver [of the policy provision requiring a written request satisfactory to the insurance company], we would conclude that the signed letter sent to the insurer constituted substantial compliance with the policy requirements . . . so as to effect a valid change of beneficiary" [citations omitted]).

We conclude that, under the substantial compliance doctrine, which we affirm as the law of this state, the owner of a life insurance policy will have effectively changed the beneficiary if the following is proven: (1) the owner clearly intended to change the beneficiary and to designate the new beneficiary; *and* (2) the owner has taken substantial affirmative action to effectuate the change in the beneficiary.[11]

The trial court in this case narrowly formulated the substantial compliance doctrine by limiting it to the contours of *Bachrach,* and rejecting the dicta in *Aetna Life Ins. Co.* Indeed, the trial court held that "[u]nder all the facts and circumstances of the case, the court finds that the insured, [Ryder], failed to do all in her power to comply with the procedures set [out] in the policy and that this failure was not occasioned by circumstances beyond her control." The trial court based its decision on the failure of Ryder to change the beneficiary on a "company approved form."

---

[11] We also point out that if the owner of the policy has done all in his or her power to comply with the change of beneficiary provision in the policy, but has failed because of some circumstance beyond his or her control, that owner has satisfied the second prong of the rule. See *Aetna Life Ins. Co.* v. *Hartford National Bank & Trust Co.,* supra, 146 Conn. 541; see also *Bachrach* v. *Herrup,* supra, 128 Conn. 76. The owner, under these circumstances, will be deemed to have taken substantial affirmative action to effectuate a change in beneficiary.

Nevertheless, the trial court found that Ryder had submitted a dated, signed, witnessed and unequivocal letter to the defendant, by which she sought to change the beneficiary in her policy, which finding none of the parties dispute. It is also undisputed that the letter referenced the policy by number and name.[12] These are the same requirements that the defendant required in its company provided form.[13] The trial court also found, and the parties do not dispute, that the defendant received this letter, understood it to mean exactly what it expressed, and placed the letter in Ryder's policy file but did not record the change in its records. Finally, the trial court found that it was Ryder's intention to change the beneficiary, and that there was no evidence that she had ever abandoned that intention. Counsel for the defendant conceded at oral argument that if we were to embrace what we have today denominated as the substantial compliance doctrine from *Aetna Life Ins. Co.*, then Ryder's letter requesting the beneficiary changes would be in substantial compliance with the policy provisions. On the basis of these undisputed facts found by the trial court, we hold, as a matter of law, that Ryder substantially complied with the change of beneficiary provision in the policy.

The plaintiff also argues that the trial court improperly concluded that the defendant had not violated CUTPA, based upon unfair insurance practices as defined in CUIPA, and, accordingly, must be reversed. We agree. The plaintiff alleged unfair insurance practices, as defined in CUIPA, as the basis of violations of CUTPA. See *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) (holding "that it is possible to state a cause of action under CUTPA for a violation of

---

[12] See footnote 4.

[13] At oral argument, the defendant's counsel could not point to any material difference between the information Ryder provided in her letter and the information requested by the defendant's form.

CUIPA"). The trial court in this case rendered judgment in favor of the defendant on the breach of contract claim because it found that "the defendant was entitled to rely on its policy provisions" and that "the plaintiff failed to demonstrate that his alleged damages would not have been avoidable by action on the part of [Ryder] or himself." Because of those findings, the trial court concluded, as a matter of law, that the defendant had not violated CUIPA or CUTPA. As a result of our disposition of the primary issue in this appeal, we reverse the trial court's determination on those claims and remand the matter to the trial court for a determination of whether there had been in fact any CUTPA violations. In addition, on remand, the trial court must also consider whether the plaintiff should be awarded compensatory interest under General Statutes § 37-3a and offer of judgment interest under General Statutes § 52-192a. See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 687 A.2d 506 (1997).

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff on the breach of contract claim, for further proceedings as to the plaintiff's CUTPA claims, and for a determination of any interest that may be due.

In this opinion the other justices concurred.