******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

*Syllabus*

The defendant employer G Co. appealed to this court from the decision of
the Compensation Review Board, which reversed the decision of the
Workers' Compensation Commissioner concluding that G Co.'s workers'
compensation insurance policy, issued by the defendant L Co., was still
in effect on March 1, 2016, the date on which the plaintiff sustained a
compensable injury while at work. In September, 2015, L Co. issued G
Co. a workers' compensation insurance policy. In October, 2015, L Co.
issued a cancellation notice with an effective cancellation date of Novem-
ber 3, 2015, and filed the cancellation notice with the National Council
on Compensation Insurance. In February, 2016, L Co. sent G Co. an
endorsement to the insurance policy. In April, 2016, G Co. was sent a
prorated portion of its previously paid premium. The plaintiff filed a
workers' compensation claim against G Co. in May, 2016, and L Co.
denied coverage. After a hearing, the commissioner found that coverage
was in place on the date of the plaintiff's injury and that the cancellation
notice did not comply with certain statutory (§ 31-321) requirements. L
Co. appealed to the board, which reversed the commissioner's decision.
*Held* that the board properly determined that the insurance policy was
cancelled effectively on November 3, 2015, and that there was no insur-
ance coverage on the date of the plaintiff's injury: L Co.'s electronic
notice of the cancellation to NCCI was sufficient to comply with the
requirements that insurance companies notify the chairman of the Work-
ers' Compensation Commission of cancellations pursuant to statute
(§ 31-248), as § 31-248 authorized the commission to utilize NCCI to
collect notices electronically of policy cancellations and was what the
legislature intended when it amended § 31-248; moreover, the fact that
G Co. may have believed that it still had insurance because L Co. did
not refund the premium until after the date of the plaintiff's injury and
sent inconsistent letters stating that the policy may be cancelled if it
did not receive certain information, did not support a conclusion that the
coverage under the policy continued notwithstanding the cancellation
notice, as an employer's belief or understanding as to when coverage
is terminated is irrelevant, and the fact that an endorsement was issued
in February, 2016, was not inherently inconsistent with the termination
of coverage as of November 3, 2015, because coverage remained in effect
for any claims that may arise for injuries occurring prior to November
3, 2015.

Argued April 19—officially released August 10, 2021

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the Fifth District finding that a
certain insurance policy issued by the defendant Liberty
Mutual Insurance Company provided coverage for the
plaintiff's compensable injury, brought to the Compen-
sation Review Board, which reversed the commission-
er's decision, and the named defendant appealed to this
court. *Affirmed.*

*James P. Brennan*, for the appellant (named defen-
dant).

*Christopher J. Powderly*, for the appellee (defendant
Liberty Mutual Insurance Company).

*Opinion*

BEAR, J. In this workers' compensation matter, the defendant employer, The Grotto, Inc. (Grotto), appeals from the finding and decision of the Compensation Review Board (board), reversing the decision of the Workers' Compensation Commissioner (commissioner), who had determined that Grotto's workers' compensation insurance policy, which was issued by the defendant Liberty Mutual Insurance Company (Liberty), was still in effect on March 1, 2016 (date of loss), the date on which the plaintiff, Laurel B. Bellerive, an employee of Grotto, sustained a compensable injury while at work. On appeal, Grotto claims that (1) Liberty's notice of cancellation of the policy pursuant to General Statutes § 31-348[1] was ineffective because it did not meet the requirements of General Statutes § 31-321,[2] (2) the board erred in its narrow reading of *Yelunin* v. *Royal Ride Transportation*, 121 Conn. App. 144, 994 A.2d 305 (2010), by adopting the rule that, "after the expiration of the fifteen day period following notice of cancellation only unequivocal evidence of an intent to continue or reinstate coverage would be sufficient to support the commissioner's conclusion that [Liberty's] coverage remained in force on March 1, 2016," (3) the commissioner concluded properly that he had the authority to determine common-law issues when they were incidentally necessary to the resolution of a claim arising under the Workers' Compensation Act (act), General Statutes § 31-275 et seq.,[3] and (4) common-law principles including negligence, misrepresentation, waiver, and estoppel, support the commissioner's finding that coverage was in place on the date of loss. We conclude that the policy was effectively cancelled on November 3, 2015, and, accordingly, we affirm the decision of the board.

The following undisputed facts are relevant to our resolution of this matter. On or about September 15, 2015, Grotto and Liberty entered into a contract for workers' compensation insurance (policy 045), which was scheduled to expire on August 20, 2016. Grotto paid an estimated premium when the policy was issued. On October 13, 2015, Liberty issued a cancellation notice with an effective cancellation date of November 3, 2015, accounting for the fifteen day waiting period required by § 31-348. Liberty's stated reason for the cancellation was Grotto's failure to provide certain self-audit materials. That cancellation notice was filed electronically with the National Council on Compensation Insurance (NCCI).[4] After the November 3, 2015 cancellation date had passed, Liberty continued to send Grotto letters requesting the audit materials that had been the basis of the policy cancellation. Some of those letters indicated that policy 045 "may" be cancelled if the audit material was not promptly received, but others indicated that policy 045 had been cancelled on November

3, 2015. Additionally, on February 18, 2016, Liberty issued an endorsement to policy 045, noting that other than the endorsement changes to policy 045, all other terms and conditions of the policy remained unchanged.

On the March 1, 2016 date of loss, the plaintiff suffered a traumatic injury to her right hand that resulted in the amputation of her index, middle, and ring fingers. That injury was compensable and arose out of and in the course of her employment with Grotto. Subsequent to the claimant's injury, Grotto forwarded incomplete audit material to Liberty, which notified Grotto on March 15, 2016, that the audit materials remained incomplete. Thereafter, Grotto sent Liberty the rest of the necessary audit documentation. Grotto was ultimately sent a prorated portion of its previously paid premium on April 5, 2016.

The plaintiff filed a workers' compensation claim against Grotto on May 6, 2016. Liberty denied coverage for the March 1, 2016 date of loss on the basis of its NCCI cancellation dated November 3, 2015. Grotto had no other workers' compensation insurance. The Second Injury Fund (fund) was made a party to the claim pursuant to General Statutes § 31-355. The commissioner held a formal hearing and, by way of a finding and decision dated May 24, 2019, found that Liberty had coverage in place on the date of loss. The commissioner subsequently granted Grotto's motion to correct, making an additional finding that the cancellation notice to NCCI had not been made in accordance with § 31-321, and denied Liberty's motion to correct.

Liberty appealed to the board, which, by way of a June 10, 2020 decision, reversed the commissioner's decision, finding that there was no coverage in place on the date of loss. Grotto filed a motion for articulation. The board thereafter issued an articulation of its decision with an accompanying memorandum of law dated August 26, 2020. Grotto appealed to this court, but the fund did not appeal the board's decision. Additional facts will be set forth as necessary.

I

Grotto argues that Liberty's notice of cancellation to the NCCI pursuant to § 31-348 was ineffective because it did not meet the requirements of § 31-321. Specifically, Grotto argues that, although the board, in its memorandum of law in support of its ruling on the motion for articulation, "notes lengthy discussions by [the] Workers' Compensation Commission [commission] about § 31-348 . . . it does not state that any 'rules prescribed by the chairman' were adopted. Since the chairman prescribed no rule to overrule the § 31-321 service requirements . . . the [board] erred in failing to hold that the failure to send the notice of cancellation by certified mail rendered the cancellation ineffective." We

disagree.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny." (Internal quotation marks omitted.) *Yelunin* v. *Royal Ride Transportation*, supra, 121 Conn. App. 148.

In *Yelunin*, this court stated that "[c]ancellation of a workers' compensation insurance policy occurs in accordance with § 31-348. *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 459, 774 A.2d 992 (2001). Section 31-348 provides in relevant part that '[t]he cancellation of any [workers' compensation insurance policy] shall not become effective until fifteen days after notice of such cancellation has been filed with the chairman [of the commission].' The only precondition to effective cancellation contained in § 31-348 is that an insurer provide notification to the chairman of the . . . commission. Although notification to the chairman is surely governed by the mandate of § 31-321, there is no independent requirement within the workers' compensation statutory scheme that a workers' compensation insurer provide notification directly to an insured that would serve to trigger the mandate of § 31-321. Indeed, § 31-348 has been interpreted as protecting employees or anyone examining coverage records in the commissioner's office. In that regard, an employer's understanding as to when coverage terminated is largely irrelevant . . . . *Dengler* v. *Special Attention Health Services, Inc.*, supra, 461." (Emphasis omitted; internal quotation marks omitted.) *Yelunin* v. *Royal Ride Transportation*, supra, 121 Conn. App. 149.

Because Liberty was not required to notify Grotto before cancelling its workers' compensation policy, the only pertinent issue with respect to the effectiveness of Liberty's cancellation is whether Liberty's electronic notice to the NCCI pursuant to § 31-348 was sufficient in light of the requirements of § 31-321. We conclude that Liberty's electronic notice to the NCCI was sufficient.

In its memorandum of law in support of its ruling on Grotto's motion for articulation, the board provided a detailed history of No. 90-116 of the 1990 Public Acts (P.A. 90-116), which amended § 31-348 to address the

possibility of electronic reporting of policy initiation and cancellation. The board found that it is clear from the legislative history of P.A. 90-116, which was adopted unanimously, that the commission may receive "certain information from the companies and/or their duly appointed agents by writing or other means which technically could mean electronic means, computer or otherwise," and that our legislature had the NCCI in mind when it referenced "duly appointed agents" in § 31-348. Indeed, the board noted that "[a] contract between the commission and NCCI to 'facilitate the exercise of its responsibilities under [§] 31-348' went into effect September 10, 1990," that "[s]ection [two], subsection [four] of this contract directed all insurers to provide notice of policy coverage and termination required under § 31-348 to NCCI, effective January 1, 1991, and that such notice requirements could be met by submission of a computer tape."[5]

We agree with the board that "the commission's longstanding policy of utilization of NCCI to collect notices electronically of compensation policy coverage and cancellations is entirely authorized by statute and, indeed, what the General Assembly voted unanimously to have th[e] commission implement." Grotto contends that the policy cancellation in this case was ineffective because there is no "rule prescribed by the chairman," pursuant to § 31-348, that expressly authorizes electronic submission of policy coverage and termination notices. We conclude that Grotto's argument is inconsistent with the intended meaning of § 31-348 as demonstrated by the legislative history set forth by the board. Accordingly, the board properly determined that policy 045 was cancelled effectively on November 3, 2015, and that there was no coverage in place on the date of loss.

## II

Grotto argues both that the commissioner has "authority to determine a common-law issue when incidentally necessary to the resolution of a claim arising under the act," and that common-law principles, including negligence, misrepresentation, waiver, and estoppel, "support the commissioner's finding that policy 045 was in effect on March 1, 2016."[6] We conclude that because policy 045 was cancelled effectively prior to the date of loss, and because "an employer's understanding as to when coverage terminated is largely irrelevant"; (emphasis omitted; internal quotation marks omitted) *Yelunin* v. *Royal Ride Transportation*, supra, 121 Conn. App. 149; common-law theories cannot support a finding that coverage was in place on the date of loss under the facts of this case.[7]

The board noted in its memorandum of decision that "[t]he commissioner did not specifically articulate the basis for his conclusion that the policy remained in force. He did, however, cite several factors which we must assume formed the factual basis for his conclu-

sion: (1) that [Liberty] did not return any of the premium until after the work injury; (2) that [Liberty] issued an endorsement in February, 2016; and (3) that [Liberty] sent letters saying the policy 'may' be cancelled if [Grotto] did not provide certain information." We conclude that the board determined correctly that none of those facts supports a finding that coverage remained in place on the date of loss.

With respect to Liberty's return of the premium after the date of loss, the board stated that "for the failure to refund the premium to be evidence that Liberty intended its coverage to continue after November 3, 2015, the delay in making the refund would have to be inherently inconsistent with the claimed cancellation. We can find no evidence in the record to suggest that [Liberty] had an obligation to return the unused portion of the premium prior to completion of the various audits." We agree with the board and note that, although the finding that Liberty did not return any portion of the premium until after the date of loss could be relevant to Grotto's claim that it *believed* it still had insurance, "an employer's understanding as to when coverage terminated is largely irrelevant . . . ." (Emphasis omitted; internal quotation marks omitted.) *Yelunin* v. *Royal Ride Transportation*, supra, 121 Conn. App. 149.

With respect to the endorsement to the policy issued on February 28, 2016, we likewise agree with the board that, "[w]hile the receipt of an endorsement from [Liberty] may well have supported the employer's subjective belief that the policy was still in force, it could only be evidence that the policy actually was still in place if the issuance of such an endorsement was logically or legally inconsistent with the notion that the policy had previously been cancelled. Since the cancellation of this policy did not render it void ab initio, [Liberty's] coverage remains in force and effect for any claims that might arise for injuries occurring prior to November 3, 2015. For the time prior to November 3, 2015, [Liberty] and [Grotto] still have a contractual relationship, with ongoing mutual obligations. As such, the mere fact an endorsement was issued in February, 2016, is not inherently inconsistent with termination of coverage as of November 3, 2015."

Finally, we are not persuaded that the allegedly inconsistent letters sent by Liberty in the months following the notice of cancellation could support a conclusion that the coverage under the policy actually did continue, notwithstanding the November cancellation notice. *Yelunin* is clear that the employer's subjective belief is immaterial, and the record lacks sufficient evidence that Liberty intended to continue or reinstate coverage after November 3, 2015.[8]

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 31-348 provides in relevant part: "Every insurance company writing compensation insurance or its duly appointed agent shall report in writing or by other means to the chairman of the Workers' Compensation Commission, in accordance with rules prescribed by the chairman, the name of the person or corporation insured, including the state, the day on which the policy becomes effective and the date of its expiration, which report shall be made within fifteen days from the date of the policy. The cancellation of any policy so written and reported shall not become effective until fifteen days after notice of such cancellation has been filed with the chairman."

[2] General Statutes § 31-321 provides in relevant part: "Unless otherwise specifically provided, or unless the circumstances of the case or the rules of the commission direct otherwise, any notice required under this chapter to be served upon an employer, employee or commissioner shall be by written or printed notice, service personally or by registered or certified mail addressed to the person upon whom it is to be served at the person's last-known residence or place of business."

[3] For the reasons set forth in part II of this opinion, we do not reach this issue.

[4] The NCCI acts as the insurer's "duly appointed agent" pursuant to § 31-348 for the purpose of notice to the chairman of the Workers' Compensation Commission of policy cancellations.

[5] The board further noted that "[i]t is our understanding that NCCI has subsequently modified the manner in which it receives electronic data to conform with the advances in technology."

[6] Additionally, Grotto argues that the commissioner had jurisdiction to consider evidence outside the records kept pursuant to § 31-348 when determining whether policy 045 was still in effect on the date of loss. That argument responds to one made by Liberty during the proceedings before the commissioner, but the board rejected Liberty's argument, and Liberty does not challenge that aspect of the board's decision in this appeal. Accordingly, we need not consider that claim.

[7] With that conclusion in mind, we need not determine whether the commissioner had jurisdiction to determine common-law issues under the facts of this case.

[8] Grotto argues that the board erred by "adopting the rule" that "after the expiration of the fifteen day period following notice of cancellation only unequivocal evidence of an intent to continue or reinstate coverage would be sufficient to support the commissioner's conclusion that [Liberty's] coverage remained in force on March 1, 2016." Grotto argues that "[t]he burden of proof in workers' compensation cases is a preponderance of the evidence, not unequivocal evidence of intent." We conclude that, in light of *Yelunin*, Liberty's conduct would not support a finding that coverage remained in place on the date of loss even under the preponderance of the evidence standard.