******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# THOMAS NAPOLITANO *v*. ACE AMERICAN INSURANCE COMPANY ET AL.
## (SC 20922)

McDonald, D'Auria, Mullins, Ecker, Alexander and Dannehy, Js.*

*Syllabus*

The plaintiff appealed, on the granting of certification, from the judgment of the Appellate Court. The plaintiff had sought, inter alia, a judgment declaring that the defendant workers' compensation insurance carrier was legally obligated to defend and indemnify the plaintiff in connection with a claim filed by the plaintiff's employee. In granting the plaintiff's motion for summary judgment, the trial court determined that the defendant did not effectively cancel a workers' compensation insurance policy that it had issued to the plaintiff because the purportedly conflicting notices the defendant had provided to the plaintiff prior to cancellation, including a notice that the plaintiff had failed to cooperate in connection with certain of the defendant's requests and a separate cancellation notice, did not constitute an unambiguous and unequivocal notice of cancellation. The Appellate Court reversed the trial court's judgment, concluding, inter alia, that the defendant effectively cancelled the policy prior to the employee's purportedly compensable injuries by virtue of the defendant's compliance with the statute (§ 31-348) governing the reporting of risks by workers' compensation insurance companies and the cancellation of workers' compensation insurance policies. The plaintiff claimed that the Appellate Court had incorrectly concluded that the cancellation notice effectively cancelled the policy. *Held*:

This court concluded that, although insurers must strictly comply with the requirements of § 31-348 when seeking to cancel a workers' compensation insurance policy, compliance with that statute does not supplant an insurer's obligations under otherwise applicable principles of contract law as they relate to the insurer and the insured, including the principle that a notice cancelling an insurance policy must be definite, certain, and unambiguous.

The Appellate Court incorrectly limited its analysis to whether there was a definite and certain notice of cancellation filed with the chairperson of the Workers' Compensation Commission pursuant to § 31-348; rather, when a court considers whether a notice of cancellation of a workers' compensation insurance policy is sufficiently definite and certain, it must consider all relevant communications between the parties.

In the present case, the defendant's notice of cancellation of the policy was not objectively definite and certain, as the conflicting noncooperation and

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

cancellation notices provided indefinite and ambigous information concerning the status of the plaintiff's insurance converage, what was required to maintain that coverage, and what the consequences would be for not meeting the deadline to comply with the defendant's requests.

Accordingly, this court reversed the judgment of the Appellate Court and remanded the case to that court with direction to affirm the trial court's judgment.

Argued September 27—officially released December 24, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the case was transferred to the Complex Litigation Docket; thereafter, the court, *Moukawsher, J.*, granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which the named defendant appealed and the plaintiff cross appealed to the Appellate Court, *Bright, C. J.*, and *Moll* and *Vertefeuille, Js.*, which reversed the trial court's judgment and remanded the case for further proceedings, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Kristen Schultze Greene*, with whom was *Michael Feldman*, for the appellant (plaintiff).

*Brian M. Paice*, for the appellee (named defendant).

*Opinion*

ALEXANDER, J. This certified appeal requires us to consider the relationship between General Statutes § 31-348,[1] which governs the cancellation of workers' compensation insurance policies, and traditional principles of contract law governing the cancellation of insurance policies. The plaintiff, Thomas Napolitano, doing

---

[1] Although § 31-348 was the subject of technical amendments since the events underlying this case; see Public Acts 2022, No. 22-89, § 28; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

business as Napolitano Roofing, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court reversing the trial court's judgment in favor of the plaintiff on his breach of contract claim. *Napolitano* v. *Ace American Ins. Co.*, 219 Conn. App. 110, 114, 137, 293 A.3d 915 (2023). The plaintiff claims that the Appellate Court incorrectly concluded that the named defendant, Ace American Insurance Company,[3] effectively cancelled the plaintiff's workers' compensation insurance by providing a cancellation notice that complied with § 31-348, notwithstanding the fact that the defendant, during the same time period, engaged in other conflicting conduct that the plaintiff contends rendered its notice of cancellation indefinite, uncertain, and ambiguous. We agree with the plaintiff and reverse the judgment of the Appellate Court.

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the second notice sent to the plaintiff on April 5, 2018, constituted a definite, certain, and unambiguous notice of cancellation that effectively cancelled the plaintiff's workers' compensation policy under . . . § 31-348?" *Napolitano* v. *Ace American Ins. Co.*, 348 Conn. 916, 303 A.3d 914 (2023).

Our review of this case reveals that it presents issues concerning the relationship between basic contract law principles and the requirements of § 31-348. Accordingly, we exercise our discretion to rephrase the certified issue as follows: Does the valid cancellation of a workers' compensation insurance policy require only the filing of a single definite, certain, and unambiguous notice of cancellation that complies with § 31-348, or does it also consider the entirety of the insurer's communications and conduct during the transaction? See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191, 884 A.2d 981 (2005) (court may reformulate certified issue to reflect more accurately issues presented); *Stamford Hospital* v. *Vega*, 236 Conn. 646, 648 n.1, 674 A.2d 821 (1996).

[3] The plaintiff also named Lanza Insurance Agency, LLC (Lanza), Travelers Indemnity Company (Travelers), Chubb National Insurance Company (Chubb), and Jazmin Victoria Echevarria as defendants. Ace American Insurance Company indicated that it would assume liability and the financial responsibilities for Chubb and Travelers, who are its agents, and they were removed as defendants. Lanza and Echevarria are not participating in this appeal because separate claims against them remain pending in the trial court. We therefore refer in this opinion to Ace American Insurance Company as the defendant and to the other defendants by name.

The record reveals the following relevant facts and procedural history.[4] The plaintiff had obtained three workers' compensation insurance policies from the defendant. The first policy is not pertinent to this appeal. The second policy was effective from October 21, 2017, to February 9, 2018, and the third policy had effective dates of coverage from February 9, 2018, to February 9, 2019. The policies were serviced by Travelers Indemnity Company (Travelers) acting on behalf of the defendant. The cancellation provision of the third policy provided that either party could cancel the policy and required the defendant to "mail or deliver to [the plaintiff] not less than ten days advance written notice stating when the [cancellation] is to take effect." It also provided that "[t]he policy period [would] end on the day and hour stated in the [cancellation] notice."

On March 28, 2018, the defendant mailed notice of an audit noncompliance charge to the plaintiff, indicating that it had not received payroll and tax records that were required for the second policy premium audit and that the failure to provide access to those records would result in the imposition of a charge of $912. The defendant resent that letter to the plaintiff on April 3, 2018, but ultimately never imposed the noncompliance charge.

On April 5, 2018, the defendant mailed two separate notices to the plaintiff, both of which were dated April 5, 2018. There is no indication as to which notice was sent first or intended to be read first; nor did either notice expressly reference the other. One of the April 5, 2018 notices, titled "Notice of Noncooperation with Audit Current Coverage" (noncooperation notice), stated that the plaintiff had failed to comply with the defendant's requests in connection with the audit, that "[f]ailure to comply will result in cancellation of [the third]

---

[4] For a more detailed recitation of the facts and procedural history of this case, see *Napolitano* v. *Ace American Ins. Co.*, supra, 219 Conn. App. 114–19.

policy," and that, "[i]f the audit is not conducted prior to the effective date of cancellation, the cancellation will remain in effect." The noncooperation notice also stated: "If you have already complied with our request, please disregard this notice." The noncooperation notice did not include a cancellation date.

The other April 5, 2018 notice, titled "Workers Compensation and Employers Liability Policy Cancellation" (cancellation notice), without making any explicit reference to the noncooperation notice sent the same day, stated in relevant part: "We wish to inform you that [the third] policy . . . is cancelled in accordance with its terms as of the effective date of cancellation indicated herein . . . . For any information concerning this cancellation, please contact your producer." The effective date of cancellation in the cancellation notice was April 25, 2018, and the producer was listed as Lanza Insurance Agency, LLC (Lanza). On April 6, 2018, the defendant sent the cancellation notice, but not the noncooperation notice, to the chairperson of the Workers' Compensation Commission (commission) via the National Council on Compensation Insurance (NCCI).[5]

On April 7, 2018, the plaintiff emailed the requested tax records to the defendant. Three days later, he emailed Jazmin Victoria Echevarria, a Lanza employee, to check his compliance status, pursuant to the directive in the cancellation notice that he contact his "producer" for any information. Echevarria contacted the defendant to inquire about the plaintiff's insurance cov-

---

[5] The commission requires that the cancellation of workers' compensation insurance policies be reported to its chairperson via the NCCI. "The NCCI acts as the insurer's 'duly appointed agent' pursuant to § 31-348 for the purpose of notice to the [chairperson] of the [commission] of policy cancellations." *Bellerive* v. *Grotto, Inc.*, 206 Conn. App. 702, 705 n.4, 260 A.3d 1228, cert. denied, 339 Conn. 908, 260 A.3d 483 (2021); see *Thibodeau* v. *Rizzitelli*, No. 3373, CRB 4-96-7 (October 14, 1997) ("[c]ommission has contracted with [the] NCCI to receive [cancellation] notices on behalf of the [chairperson]").

erage and, subsequently, emailed the plaintiff, informing him that "[the defendant] stated that you are compliant at this time." Lanza then issued two certificates of insurance to the plaintiff certifying that he had workers' compensation insurance coverage pursuant to the third policy.[6]

On April 16, 2018, the plaintiff received an email from Travelers advising him that it had received the tax records but that the plaintiff had failed to supply a policyholder audit report. The email made no reference to the April 25, 2018 cancellation date and requested that the plaintiff provide the additional documentation by April 21, 2018. The plaintiff dismissed this request as "noise" and did not provide the additional documentation.

On May 29, 2018, Joshua Arce, an employee of the plaintiff sustained injuries in the course of his employment and, thereafter, filed a claim for compensation benefits with the commission. The defendant denied Arce's claim and refused to defend or indemnify the plaintiff under the third policy, claiming that the policy had been terminated as of April 25, 2018.[7] The workers' compensation commissioner for the first district (commissioner)[8] ultimately found that Arce had suffered an

---

[6] Both certificates of insurance listed an incorrect policy number.

[7] Lanza, as the plaintiff's insurance producer, never received notice of the cancellation. As stated in Lanza's response to the plaintiff's complaint filed with the Connecticut Insurance Department: "We stated to . . . Travelers . . . that we believed the policy was still in force, as we never received a notice of cancellation or a cancellation, just a notice of a noncompliance charge. If we had received an actual notice of cancellation and or a cancellation, we would have endeavored to contact [the plaintiff], although we are not required to do so, but, being that we never received either, we still believed the policy was in force."

[8] "As a result of General Statutes § 31-275d (a) (1), the administrative adjudicators for the commission became known as administrative law judges, rather than their former title of workers' compensation commissioners." (Internal quotation marks omitted.) *Esposito* v. *Stamford*, 350 Conn. 209, 211 n.3, 323 A.3d 1066 (2024). Because this appeal includes decisions rendered both before and after October 1, 2021, which was the effective

injury in the course of his employment but determined that the plaintiff did not have workers' compensation insurance in effect on the date of loss because the third policy was "properly cancelled electronically with the [chairperson of the commission] . . . ." The commissioner stated that his inquiry as to whether the cancellation notice effectively cancelled the third policy was limited to whether the defendant had complied with the requirements of § 31-348, which required that the cancellation be reported to the chairperson of the commission fifteen days before the effective date of cancellation. The commissioner, in other words, narrowly considered only the issue of whether the NCCI had reported the policy as terminated on the date of cancellation but not whether the notices complied with the defendant's contractual obligations.

The plaintiff and the Second Injury Fund (fund)[9] then entered into a settlement agreement with Arce, under which the plaintiff and the fund agreed to pay Arce $225,000 in compensation for his injuries and medical expenses. In exchange, Arce agreed to withdraw a pending civil action that he had filed against the plaintiff, and the fund withdrew its intervening complaint in that action. See *Arce* v. *Napolitano*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-19-6115160-S.

The plaintiff then commenced the present action by way of an eight count complaint,[10] seeking, inter alia,

---

date of § 31-275d (a) (1), consistent with recent workers' compensation appeals, we refer to the commission's administrative adjudicators by their title at the time of the applicable decision. See id.

[9] The fund became a party to the workers' compensation proceedings pursuant to General Statutes § 31-355 (b), which renders it liable to pay an award of compensation "against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award . . . and whose insurer failed, neglected, refused or is unable to pay the compensation . . . ."

[10] The plaintiff's complaint contained five counts directed against the defendant. Count one sought a declaratory judgment regarding the parties' respective rights and obligations under the third policy. Counts two, three, four, and eight alleged breach of contract, bad faith, negligent misrepresenta-

a judgment declaring that the defendant was legally obligated to defend and indemnify the plaintiff in connection with Arce's workers' compensation claim and damages for breach of contract. Both parties moved for summary judgment on those two counts. The plaintiff argued that he was entitled to summary judgment because the defendant's cancellation of the third policy was not effective because "[t]he cancellation notice was not definite, certain, and unambiguous based on the undisputed facts in this case . . . ." The trial court concluded that the cancellation of workers' compensation insurance must be " 'unambiguous and unequivocal' " and that the court must consider all communications that directly related to the issue of cancellation when making that determination. The trial court granted the plaintiff's motion for summary judgment after concluding that the third policy was not cancelled on April 25, 2018, and that it remained in full effect when Arce was injured because the multiple notices, when considered together, were not unambiguous and unequivocal.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming, inter alia, that the trial court improperly granted the plaintiff's motion for summary judgment on the ground that the cancellation of the third policy was not effective because the cancellation notice was not "unambiguous and unequivocal." (Internal quotation marks omitted.) *Napolitano* v. *Ace American Ins. Co.*, supra, 219 Conn. App. 120. The Appellate Court held that the cancellation notice served to cancel the third policy because "it was . . . certain and unequivocal under § 31-348 and complied with the requirements thereof, and . . . [it] cancelled [coverage] in accordance with [the terms of] the third

tion, and promissory estoppel, respectively. Having found in the plaintiff's favor on counts one and two, the trial court concluded the plaintiff's other claims were moot. Only the declaratory judgment and breach of contract claims are at issue in this appeal.

policy." (Footnote omitted.) Id., 124. The Appellate Court relied on its decision in *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 774 A.2d 992 (2001), for the proposition that "[w]hat an employer policyholder subjectively interprets from reading various notices sent by an insurer is not a consideration in the determination of whether a cancellation notice is certain and unequivocal in the pursuit of compliance with § 31-348." *Napolitano* v. *Ace American Ins. Co.*, supra, 127; see *Dengler* v. *Special Attention Health Services, Inc.*, supra, 461. The Appellate Court reasoned that the noncooperation notice was not relevant to its analysis because there was no evidence that it would have provided conflicting information to the chairperson of the commission or to a prospective employee, as the defendant had sent the chairperson only the cancellation notice. *Napolitano* v. *Ace American Ins. Co.*, supra, 127–28. The Appellate Court also determined that the defendant also complied with its contractual obligations when it sent the cancellation notice "not less than ten days" before the cancellation date, as required under the third policy. (Internal quotation marks omitted.) Id., 129. Accordingly, the Appellate Court reversed the trial court's judgment. Id., 137.

On appeal to this court, the plaintiff claims that the Appellate Court incorrectly concluded that the cancellation notice effectively cancelled the plaintiff's workers' compensation coverage under the third policy by operation of § 31-348. The plaintiff argues that, although the defendant sent the cancellation notice to the chairperson of the commission in compliance with § 31-348, such notice did not effectively cancel his coverage because the defendant was required but failed to give definite, certain, and unambiguous notice of cancellation, as required by law. He contends that the Appellate Court should have considered whether the defendant gave him definite, certain, and unambiguous notice of

cancellation by looking at all of the relevant communications between the parties, not just the single cancellation notice sent to the chairperson. We agree with the plaintiff and conclude that the defendant's communications to the plaintiff did not provide him with definite, certain, and unambiguous notice of cancellation, despite the defendant's having complied with the requirements of § 31-348.

It is well established that whether the trial court properly granted a motion for summary judgment presents a question of law over which our review is plenary. See, e.g., *Recall Total Information Management, Inc.* v. *Federal Ins. Co.*, 317 Conn. 46, 51, 115 A.3d 458 (2015). We begin our analysis by setting forth the legal principles that govern our review of the certified issue.[11]

Insurers "must comply strictly with policy provisions and statutory mandates" when cancelling insurance policies. *Majernicek* v. *Hartford Casualty Ins. Co.*, 240 Conn. 86, 95, 688 A.2d 1330 (1997). It is well settled that notices cancelling insurance policies must be "construed in favor of the insured . . . [and] be definite

---

[11] In connection with its response to the plaintiff's claim on appeal, the defendant argues that, because the certified issue was limited to whether the *cancellation notice* "constituted a definite, certain, and unambiguous notice of cancellation," the court and the plaintiff cannot look beyond the actual cancellation notice. (Internal quotation marks omitted.) As we noted previously in footnote 2 of this opinion, we rephrased the certified issue to more accurately reflect the issue presented.

The appellate briefs of both parties also address the issue of whether Lanza was the defendant's agent. The Appellate Court addressed this issue as an alternative ground on which to affirm the trial court's judgment and concluded that there was a genuine issue of material fact as to whether Echevarria, as Lanza's employee, "was acting as an agent of the defendant when she told the plaintiff that he was compliant with his policy . . . ." *Napolitano* v. *Ace American Ins. Co.*, supra, 219 Conn. App. 128. Because the trial court denied Lanza and Echevarria's motion for summary judgment, and Lanza's agency status is not an issue certified for review, we decline to consider further the relationship between the defendant and Lanza, as other factual issues concerning Lanza remain pending before the trial court.

and certain," and "[a]ny uncertainty as to the meaning of a notice from an insurer to its insured must be resolved against the insurer and in favor of the insured." (Citations omitted.) *Travelers Ins. Co.* v. *Hendrickson*, 1 Conn. App. 409, 412, 472 A.2d 356 (1984); see, e.g., *Bessette* v. *Fidelity & Casualty Co.*, 111 Conn. 549, 556, 150 A. 706 (1930) (concluding that defendant's claim contradicted language of policy and "violate[d] the rule that a notice of cancellation must be definite and certain"); *21st Century North America Ins. Co.* v. *Perez*, 177 Conn. App. 802, 823, 173 A.3d 64 (2017) ("[t]he cancellation notice . . . meets [the] standard, as it plainly apprised the insured . . . that the policy would be cancelled due to their nonpayment of the June installment unless they tendered payment . . . before July 4, 2012"), cert. denied, 327 Conn. 995, 175 A.3d 1246 (2018); *Travelers Ins. Co.* v. *Hendrickson*, supra, 413 ("[because] neither of the notices mentioned cancellation, [the court] cannot say that they were clear and unambiguous; they must be resolved against the plaintiff and . . . cannot be taken, either separately or together, as an effective notice of cancellation"). Whether a cancellation notice is definite and certain is an objective analysis, and "the policyholder's expectations should be protected as long as they are objectively reasonable from [a] layman's point of view." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Tenn*, 342 Conn. 292, 299, 271 A.3d 1014 (2022).

In the context of the cancellation of workers' compensation insurance policies, insurers must strictly comply with the requirements of § 31-348.[12] Section 31-

---

[12] General Statutes § 31-348 provides: "Every insurance company writing compensation insurance or its duly appointed agent shall report in writing or by other means to the chairperson of the Workers' Compensation Commission, in accordance with rules prescribed by the chairperson, the name of the person or corporation insured, including the state, the day on which the policy becomes effective and the date of its expiration, which report shall be made within fifteen days from the date of the policy. The cancellation of any policy so written and reported shall not become effective until fifteen

348 provides that the notice of cancellation of workers' compensation insurance policies must be in writing and that the cancellation is not effective until fifteen days after the notice is filed with the chairperson of the commission. To comply with § 31-348, the cancellation notice must specify "an ascertainable date and time when cancellation will occur, not a specific date and time when cancellation might become effective if certain events do or do not transpire." *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 460. Cancellation notices furnished to the chairperson under the statute likewise must be definite and certain in their communication of the cancellation.[13]

Whether compliance with § 31-348 supplants an insurer's obligations under otherwise applicable and basic principles of contract law when there is a cancellation of a workers' compensation insurance policy is informed by the text and purpose of the statute. In accordance with General Statutes § 1-2z, we begin our analysis[14] with the relevant text of § 31-348, which provides: "The cancellation of any policy so written and reported shall not become effective until fifteen days after notice of

days after notice of such cancellation has been filed with the chairperson. Any insurance company violating any provision of this section shall be fined not less than one hundred nor more than one thousand dollars for each offense."

[13] The standard of clarity required of communications that cancel workers' compensation insurance policies has been framed in various ways. The standard set forth in *Travelers Ins. Co.* v. *Hendrickson*, supra, 1 Conn. App. 409, requires the cancellation to be "definite and certain." Id., 412. Similarly, the standard set forth in *Dengler* requires a cancellation to be "certain and unequivocal . . . ." *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 460. Both standards require the same bar of clarity necessary to cancel a policy.

[14] In their appellate briefs, the parties have not expressly framed the issue before this court as a question of statutory construction governed by § 1-2z. Nevertheless, because the issue before this court; see footnote 2 of this opinion; concerns the scope of § 31-348 with respect to an insurer's obligations in cancelling a workers compensation insurance policy, we treat it as a question of statutory construction.

such cancellation has been filed with the chairperson." The clear and unambiguous language of § 31-348 obligates insurers to provide written notices of cancellation of workers' compensation insurance policies to the chairperson of the commission. The statute, however, does not purport to dictate or otherwise regulate the content of the cancellation notice that must be sent to the insured and contains no suggestion that the required notice to the chairperson satisfies the insurer's obligation to properly and unambiguously notify its insured of the cancellation.

More than ninety years ago, this court held that the narrow purpose of the statute now codified at § 31-348 is "to make an authentic record of the insurance policies in existence, so that any employee or prospective employee may ascertain whether the employer is insured and if so [by] what company." *Piscitello* v. *Boscarello*, 113 Conn. 128, 131, 154 A. 168 (1931); see *Rossini* v. *Morganti*, 127 Conn. 706, 708, 16 A.2d 285 (1940) (in every workers' compensation policy, "each employee of the insured is in a very real sense a party"). Section 31-348, narrowly construed and limited in scope, does not require or suggest a follow-up notice of cancellation to the insured because "an employer's understanding as to when coverage terminated is largely irrelevant . . . ." *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 461; see *Yelunin* v. *Royal Ride Transportation*, 121 Conn. App. 144, 149, 994 A.2d 305 (2010) (holding that only precondition of § 31-348 is to give notice of cancellation to chairperson of commission because statute lacks independent requirement to provide notification directly to insured).

Consistent with the Appellate Court's analysis in this case; see *Napolitano* v. *Ace American Ins. Co.*, supra, 219 Conn. App. 126–27; the defendant relies on *Dengler* and argues that § 31-348 requires this court to consider the cancellation notice standing by itself, without

regard to the defendant's other conduct or communications, because workers' compensation is a creature of statute that requires a court to look to the statutory scheme to determine the requirements governing workers' compensation insurance and its cancellation. In *Dengler*, the Appellate Court held that, when insurers cancel workers' compensation insurance policies, the cancellation notices must be "certain and unequivocal"; *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 460; and must "do more than merely threaten to cancel." (Internal quotation marks omitted.) Id., 461. The insurer in *Dengler* claimed that it had cancelled a workers' compensation insurance policy and was not liable to pay benefits to an employee of its insured. Id., 457. The insurer had sent its insured employer a letter stating that it would cancel the policy in thirty days if the employer did not pay past due premiums and sent a copy of that letter to the chairperson of the commission. Id., 457–58. Approximately one month later, the insurer sent another letter to the employer, stating that the policy would be cancelled the following day because the employer had failed to pay the premiums. Id., 458. The insurer also sent a copy of that letter to the chairperson. Id. The Appellate Court held that the first letter was not a valid cancellation notice because "it was merely a warning that cancellation might occur" and that the coverage nevertheless remained in effect for fifteen days after the filing of the second letter per § 31-348, despite it being a valid cancellation notice. (Emphasis omitted; internal quotation marks omitted.) Id., 461. Acknowledging that § 31-348 is intended to "[protect] employees' interests by affording them access to accurate records filed in the [chairperson's] office about an employer's compensation coverage"; id., 460; the court concluded that, because a third party would not have been able to ascertain whether the cancellation occurred given the

insurer's ambiguous language in the first notice, the first notice was not certain and unequivocal. Id., 460–61. The court observed that "an employer's understanding as to when coverage terminated is largely irrelevant . . . ." Id., 461. After analyzing both notices sent to the chairperson to determine whether the insurer had satisfied § 31-348, the court held that the employer had workers' compensation insurance in effect at the time of its employee's accident, despite the employer's subjective understanding of the status of the insurance coverage. Id., 461–62.

In our view, *Dengler* is inapposite to the present case. The Appellate Court's analysis in *Dengler* was limited to the requirements governing notices of cancellation provided by the insurer *to the chairperson of the commission*; the case, in no respect, involved or addressed the requirements for cancellation governing the contractual relationship between the employer and its insurer. See id., 457–62. As the Appellate Court recognized in the present case, "[a]t issue in *Dengler* was not that each notice could have communicated conflicting messages to the employer; rather, the gravamen was that each notice was filed with the *chairperson of the commission*, less than one month apart, attempting to effectuate the cancellation of the employer's insurance policy pursuant to § 31-348." (Emphasis altered.) *Napolitano* v. *Ace American Ins. Co.*, supra, 219 Conn. App. 125. There is no indication that the court in *Dengler* intended to suggest that the requirements in § 31-348 had any impact on the contractual relationship between the insurer and the insured employer, or that the court intended to fashion any rules for determining the legal or contractual validity of the insurer's putative cancellation vis-à-vis its insured. *Dengler* established nothing more than a requirement that the notice of cancellation provided to the chairperson of the commission must be certain and unequivocal to satisfy the statute.

The Appellate Court incorrectly limited its analysis in the present case to whether there was a definite and

certain notice of cancellation under § 31-348 and then applied that circumscribed inquiry to determine the contractual obligations between the plaintiff and the defendant. See id., 124, 129. As a result, the Appellate Court concluded that, because the chairperson of the commission received only the cancellation notice, the court needed to consider only that notice to determine whether the notice of cancellation was definite and certain as between the insurer and insured. See id., 127–28, 129. We conclude, instead, that, when a court considers whether notice of cancellation made under a workers' compensation insurance policy was sufficiently definite and certain, it must consider all relevant communications between the parties, rather than limit its analysis to the notice received by the chairperson under § 31-348.[15] The defendant argues that, even if we were to consider all of the communications relating to cancellation in addition to the cancellation notice itself, those documents and communications referenced by the plaintiff "unambiguously notified him that [the third] policy '[was] cancelled' effective April 25, 2018," in accordance with the terms of the policy. We disagree.

Under the guiding principles of contract law, the defendant's notice of cancellation was not objectively

---

[15] Although the defendant argues that the Appellate Court's analysis is supported by Connecticut case law, it has failed to point to any workers' compensation insurance cancellation case in which the claim at issue concerned a breach of contract, as opposed to whether the insurer complied with § 31-348 or the workers' compensation statutory scheme. See *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 459–61; see also *Bellerive* v. *Grotto, Inc.*, 206 Conn. App. 702, 706, 260 A.3d 1128 (defendant employer claimed that insurer's "notice of cancellation to the NCCI pursuant to § 31-348 was ineffective because it did not meet the requirements of [General Statutes] § 31-321"), cert. denied, 339 Conn. 908, 260 A.3d 483 (2021); *Yelunin* v. *Royal Ride Transportation*, supra, 121 Conn. App. 148–49 (when defendant claimed that insurer must give insured notice of cancellation, court held that "§ 31-321 does not . . . independently require workers' compensation insurance providers to provide notice in any particular circumstance").

definite and certain under the cancellation provision of the third policy for three reasons. First, the plaintiff received two conflicting notices on the same day, April 5, 2018; one that stated that the policy was cancelled, and the other state that failure to comply with the defendant's requests in connection with the audit would result in cancellation of the policy. Second, the plaintiff communicated with Lanza, in accordance with an instruction in the cancellation notice, to inquire about his compliance status and was told that he was compliant. Third, the effective date of cancellation was stated only in the cancellation notice and did not appear in any other form of communication received during the relevant time period, whereas other documents relating to the alleged noncompliance and conditional cancellation referred to other dates. For example, the email sent by Travelers on April 16, 2018—only days after the plaintiff was told by Lanza that the defendant considered him in compliance—appeared to create a new, April 21, 2018 deadline for compliance, without explaining what had changed since he was told that he was compliant or the consequence that could result if the new deadline was not met, and without any reference, direct or indirect, to the April 5, 2018 cancellation notice. When considered in its entirety, the plaintiff received indefinite and ambiguous information concerning the status of his insurance coverage, what was required to maintain that coverage, and what the consequences would be for not meeting the compliance deadline. See, e.g., *Johnson* v. *Acadian Contractors & Consultants, Inc.*, 590 So. 2d 623, 626 (La. App. 1991) (concluding that "sending . . . two notices [with different effective dates of cancellation] created an ambiguity as to the exact date of cancellation, particularly [when] both notices were received by the insured on the same date"), cert. denied, 591 So. 2d 700 (La. 1992).

Relying on *21st Century North America Ins. Co.* v. *Perez*, supra, 177 Conn. App. 802, the defendant argues

that, even if we consider the other communications, the sending of a "notice 'warning of cancellation' does not invalidate a subsequent cancellation notice." We disagree with the premise that the cancellation notice dated April 5, 2018 was a notice that was "subsequent" to the other communications at issue. To the contrary, there were simultaneous and later communications that muddled the meaning and significance of the cancellation notice. We also do not concur with the defendant's reading of *21st Century North America Ins. Co.*, which is factually distinguishable from the present case. The cancellation notice in that case, which included an opportunity to cure and a cancellation date that would become operative if the defendant did not cure in time, was not inherently confusing or ambiguous. See *21st Century North America Ins. Co.* v. *Perez*, supra, 811. It plainly stated that the insurance would be cancelled if the insured did not comply by a specified date. Id. The notice was not rendered uncertain or indefinite by a confusing series of prior, simultaneous, and subsequent communications.

The defendant also asserts that, if we compare multiple communications issued by an insurer, the resulting analysis will be "untenable," leading to an increase in "disingenuous claims by a party who would want to take all measures necessary to remain covered by insurance." We disagree. As a matter of law, employers are required to have workers' compensation insurance; see General Statutes § 31-284 (a); but insurers are the parties that typically write these contracts and largely decide what is required to maintain coverage. Given the leverage insurers have over insured parties, as the Appellate Court stated in *Travelers Ins. Co.* v. *Hendrickson*, supra, 1 Conn. App. 409, we resolve all doubts in favor of coverage and require that insurers give objectively definite and certain notices of cancellation to insured parties. Id., 412. With no indication from the

legislature that it intended § 31-348 to eliminate the insurer's common-law obligation to provide the insured employer with definite and certain notice of cancellation in the context of a workers' compensation insurance policy, we decline to adopt the defendant's position, which conflicts with basic principles of insurance law. See, e.g., *Dorfman* v. *Smith*, 342 Conn. 582, 609, 271 A.3d 53 (2022) ("[a]lthough the legislature may eliminate a [common-law] right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed" (internal quotation marks omitted)). Insurers must both provide definite, certain, and unambiguous cancellation notices as a matter of contract law between the insurer and the insured and comply with the statutory requirements of § 31-348 when seeking to cancel a workers' compensation insurance policy. Because the defendant did not do so in the present case, we conclude that the Appellate Court improperly reversed the trial court's judgment in favor of the plaintiff.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment.

In this opinion the other justices concurred.